IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| DONNA HANNING, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-14-3364 |
| ST. JOSEPH'S | * | |
| MINISTRIES, INC., *et al.*, | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Donna Hanning sued St. Joseph's Ministries, Inc. ("St.
Joseph's"), and others[1] (the "Defendants"), in the Circuit Court
for Frederick County, for employment discrimination in violation
of the Age Discrimination in Employment Act ("ADEA"),[2] and the
Family and Medical Leave Act of 1993 ("FMLA").[3]  ECF No. 2.  The
Defendants removed the suit to this Court.  ECF No. 1.  Pending
is the Defendants' motion for summary judgment.  ECF No. 16.  No
hearing is necessary. Local Rule 105.6 (D. Md. 2014).  For the
following reasons, the Defendants' motion will be granted.

---

[1] Hanning also sued Paula Gabriel and Kerri Richards.  ECF No. 2.

[2] 29 U.S.C. §§ 621, *et seq.* (2012).

[3] 29 U.S.C. §§ 2601, *et seq.* (2012).  Hanning also brought a
related state law claim for employment discrimination.  ECF No.
2; Md. Code Ann., State Gov't § 20-601, *et seq.* (West 2010).

I.   Background

A.   Facts[4]

St. Joseph's is a 106-bed skilled nursing care center in

Emmitsburg, Maryland; it is sponsored by an order of Catholic

nuns called "the Daughters of Charity."   ECF No. 16-3 ¶¶ 3-4.

Hanning is a 59 year old Registered Nurse; she has worked for

St. Joseph's and its predecessors since 1986.   ECF No. 16-4 at

3.[5]   Richards is St. Joseph's Director of Human Resources.   ECF

Nos. 16-3 ¶ 2.   Gabriel is St. Joseph's Director of Nursing; she

has supervised Hanning since 2011.   ECF Nos. 16-5 at 3; 17-2 at

6.

St. Joseph's is divided into two floors, or

"neighborhoods": the St. Vincent's neighborhood ("St.

Vincent's"), where the residents are retired Daughters of

Charity nuns, and the St. Catherine's neighborhood ("St.

Catherine's"), where the residents are members of the public.

---

[4] The facts are from exhibits attached to the Defendants' motion,
ECF No. 16, and Hanning's opposition, ECF No. 17.   In reviewing
a motion for summary judgment, the nonmovant's evidence "is to
be believed, and all justifiable inferences are to be drawn in
[her] favor."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

[5] Hanning worked at St. Joseph's full-time from 1986 to August
2008; part-time from November or December 2008 to April 2009;
and full-time from May 2009 to June 2013.   ECF No. 16-4 at 3-6.
According to the St. Joseph's Associate Handbook, "All
employment is at will, and the employer may terminate an
associate at its discretion, even for a first offense, if deemed
sufficiently serious to warrant an immediate dismissal."   ECF
No. 16-14 at 5.

ECF No. 16-3 ¶ 5.  Each neighborhood has a "sister servant," who advocates for the residents when a family member is unable to do so.  ECF No. 16-4 at 7.  Sister Clarice Correia served as the advocate for St. Vincent's.  *Id*. at 8.

On April 17, 2013, Hanning emailed Gabriel and Richards a request for FMLA leave forms in connection with her physician's recommendation that she undergo non-elective thyroid surgery. ECF No. 17-7 at 2.  The email noted that Hanning did not know when the surgery would be scheduled.  *Id*.  Beth Gilbert, St. Joseph's Human Resources Generalist, sent Hanning FMLA information and necessary forms, including the Employee Request for FMLA Leave and Certification of Health Care Provider.  ECF No. 17-8 at 2-3.[6]

---

[6] The forms were due on May 7, 2013.  ECF No. 17-8 at 4.  On May 5, 2013, Hanning told Gilbert that she could not meet the May 7 deadline because her physician wanted to wait for her surgeon to review the results of a thyroid biopsy before scheduling the procedure.  ECF No. 17-9 at 2.  Richards informed Hanning that "these delays happen all the time," and she could still take FMLA leave when she had completed the forms.  ECF No. 16-4 at 28.  Hanning testified that her FMLA rights were violated because she was reassigned to St. Catherine's after requesting FMLA leave, and then fired while undergoing medical testing. ECF Nos. 16-4 at 29) ("Well, three business days after I asked for FMLA, I had a radical change of job."); 17-4 at 5.  She acknowledged, however, that she has no evidence that she was fired for requesting FMLA leave.  ECF No. 17-4 at 5.

Also in April 2013, St. Joseph's management "received several complaints" about Hanning. ECF No. 17-6 at 7.[7] Correia described Hanning as a "drill sergeant" with a "know-it-all" attitude. *Id.* Correia complained that Hanning put the residents to bed before supper, thus preventing them from "participating in evening activities," did not help the residents with "personal care," and demeaned staff. *Id.* at 11. Two of the residents were apparently afraid of Hanning. *Id.* Staff avoided shifts when Hanning was working. *Id.* at 8.

On May 13, 2013, Hanning was reassigned from St. Vincent's to St. Catherine's. *Id.* at 9; ECF No. 16-3 ¶ 6. Hanning retained the same position, schedule, responsibilities, salary, and benefits. ECF Nos. 16-4 at 12-13; 17-6 at 8-9. Barb Jensen--who is older than Hanning--replaced her at St. Vincent's. ECF Nos. 16-3 ¶ 7; 16-4 at 15.[8]

---

[7] Hanning's 2002 performance evaluation noted that she "presents herself in a negative way" to other staff, "resists suggestions from her [Director of Nursing]," complains about her job, and "talks down" to staff. ECF No. 17-6 at 13. Hanning's 2011 performance evaluation described her as a "micromanager" who "lacked a teamwork approach to her job." *Id.* at 12.

[8] Hanning testified that her ADEA claim is based on the fact that a younger nurse, Kathleen Dengler, who is "[p]robably [in her] early 40s," "now" has her position at St. Vincent's. ECF No. 17-4 at 5. Hanning was deposed on April 1, 2015. *Id.* at 2. She acknowledged, however, that in May 2013, Jensen took over her shifts. ECF No. 16-4 at 15, 31. In November 2013, Jensen voluntarily resigned for medical reasons. ECF No. 16-3 ¶ 7.

On May 24, 2013, Hanning informed Richards, Gabriel, and John Henry--St. Joseph's Administrator--that she had to visit her mother, who was in hospice care in Philadelphia. ECF No. 17-6 at 13. Hanning had often asked not to work weekends, which was when she preferred to visit her mother. *Id.*[9] Hanning "never explained why she was unable to visit her mother on her regularly scheduled days off." *Id.* Hanning's sister was her mother's primary caregiver. ECF No. 16-4 at 16.

On June 7, 2013, at about 8:00 p.m., Hanning, who was in front of the St. Catherine's nurses' station, noticed "R.C."[10] when "[h]er [wheelchair] seat alarm went off and she was trying to propel herself out of the chair." ECF No. 16-4 at 18. Hanning "tried to settle her down"; however, R.C. "was flailing her arms at [Hanning]," and speaking nonsensically. *Id.* at 19. R.C.'s "right foot was flat on the seat of the chair," as if "she was getting ready to tip out of the chair." *Id.* To prevent R.C. from falling, Hanning tucked a fleece blanket around R.C.'s waist, and pulled it behind her so that "[o]ne end of the fleece overlapped the other end" in a "half knot." *Id.* at 19-22. Hanning testified that the blanket was "pulled very

---

[9] Hanning visited her mother once a month for about three days. ECF No. 16-4 at 16.

[10] For privacy reasons, the resident will be referred to by her initials. R.C. is 89 years old, and has dementia. ECF No. 16-10 ¶ 5.

loose," "slack," and "falling off." *Id.* at 21.  The comforter

succeeded in keeping R.C. in her wheelchair. *Id.*  She believed

that R.C. could have "easily removed" the blanket.  ECF No. 17-4

at 6.

Two nursing assistants--Pamela Kaas and Amy Weddle--found

R.C. "tied to her wheelchair" with the blanket, and "untied

her."  ECF Nos. 16-10 ¶ 7; 17-5 at 2; 17-6 at 5.  Weddle averred

that R.C. would not have been able to remove the blanket because

of her "frail" condition, and as "the blanket was secured

tightly around her waist[,] and tied behind the wheelchair."

ECF No. 16-10 ¶ 8.[11]  Weddle and Kaas reported the incident to

St. Joseph's Social Work Director, Laura Webber, who reported it

to Gabriel.  ECF Nos. 17-5 at 2; 17-6 at 5.

When the June 7, 2013 incident occurred, Hanning understood

that St. Joseph's has a policy against restraining residents

(the "nonrestraint policy").  ECF No. 17-4 at 3.  Under the

nonrestraint policy,

> Physical restraints are defined as any manual method
> or physical or mechanical device, material or
> equipment attached or adjacent to the resident's body
> that the individual cannot remove easily[12] which
> restricts freedom of movement or normal access to
> one's own body.  We do not encourage the use of

---

[11] Weddle has "never seen a resident tied to a wheelchair, other
than on June 7, 2013."  ECF No. 16-10 ¶ 10.

[12] Gabriel testified that the phrase "cannot remove easily" is
"open to interpretation."  ECF No. 17-2 at 6.

restraints in this facility.  A restraint may be
considered if failure to use it is likely to endanger
the health or safety of the resident or others.
Restraints may not be used for discipline or
convenience.

ECF No. 17-1 at 2.  Before restraining a resident, staff should

check the resident's chart for a "restraint order" entered by a

physician, and document medical symptoms meriting the use of a

restraint.  *Id.*  Hanning admitted she had not checked R.C.'s

chart for a restraint order or contacted the on-call physician

for a restraint order.  ECF No. 17-4 at 4.[13]

On June 10, 2013, Gabriel scheduled a telephone call with

Hanning to discuss the incident.  ECF No. 17-6 at 4.  According

to Gabriel's notes from the telephone call, when asked whether

she was aware that R.C. did not have a restrain order, Hanning

responded:

I did it for [five minutes] because she was kicking at
me, her legs [were] going everywhere, I was trying to
keep her in her [wheelchair].  I know restraints are
frowned upon but I felt this was the only safe thing
[at] the time for a few [minutes] rather than have her

---

[13] Hanning testified that she generally agrees with the
nonrestraint policy; however, "in an emergency[,] a nurse can
make a judgment [call]."  ECF No. 17-4 at 3.  Hanning further
testified--contradictorily--that an emergency may require a
nurse to intervene, but that does not mean restraining a
resident in a facility--like St. Joseph's--with a nonrestraint
policy.  *Id.*  Hanning then testified that intervening means to
"try to help the patient as best they can," which, at times,
means physically restraining the resident.  *Id.* at 4.  Gabriel
testified that "[r]esidents are allowed to fall.  It sounds
crazy, but residents are allowed to fall."  ECF No. 17-2 at 9;
*id.* ("[T]hey have the right to fall.").

7

> fall.  I was standing there the whole time at my med
> cart watching her.

ECF No. 16-11 at 2.  After deciding that Hanning had restrained
R.C. in violation of the nonrestraint policy, and that the
violation was "gross misconduct,"[14] Gabriel, Richards, and Henry
fired Hanning.  ECF Nos. 17-2 at 7; 17-3 at 5-6; 17-6 at 4-5.[15]

B.    Procedural History

On September 16, 2014, Hanning sued the Defendants in the
Circuit Court for Frederick County for employment discrimination
in violation of federal and state laws.  ECF No. 2.  On December
28, 2014, the Defendants removed the suit to this Court.  ECF
No. 1.

On May 18, 2015, the Defendants moved for summary judgment.
ECF No. 16.  On June 4, 2015, Hanning opposed the motion.  ECF
No. 17.  On June 22, 2015, the Defendants replied.  ECF No. 18.

II. Analysis

A.    Legal Standard

The Court "shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.

----

[14] Gross misconduct includes the "[f]ailure to follow established
safety policies and procedures."  ECF No. 16-14 at 6.

[15] From January 2013 to March 2015, St. Joseph's has hired 10
nurses.  ECF No. 17-6 at 6.  Two of those nurses are older than
Hanning; five are more than 40 years old.  *Id.*

Civ. P. 56(a);[16] *Celotex Corp.*, 477 U.S. at 322.  In considering

the motion, the judge's function is "not . . . to weigh the

evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial." *Anderson*, 477 U.S.

at 249.  A dispute about a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most

favorable to . . . the nonmovant and draw all reasonable

inferences in her favor," *Dennis v. Columbia Colleton Med. Ctr.,*

*Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must

abide by the "affirmative obligation of the trial judge to

prevent factually unsupported claims and defenses from

proceeding to trial," *Bouchat v. Balt. Ravens Football Club,*

*Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal

quotation marks omitted).  The opposing party must produce

evidence upon which a reasonable fact finder could rely. *Celotex*

*Corp.*, 477 U.S. at 322-23.  The mere existence of a "scintilla"

of evidence is insufficient to preclude summary judgment.

*Anderson*, 477 U.S. at 252.

---

[16] Federal Rule of Civil Procedure 56(a), which "carries forward
the summary-judgment standard expressed in former subdivision
(c)," changed "genuine 'issue' [to] genuine 'dispute,'" and
restored the word "'shall' . . . to express the direction to
grant summary judgment." Fed. R. Civ. P. 56 advisory
committee's note.

B.    The Defendants' Motion

1.    FMLA Claim

Under the FMLA, during a 12-month period, eligible
employees are entitled to 12 weeks of leave for covered reasons,
including a serious health condition.  29 U.S.C. §
2612(a)(1)(D).  Employers may not (1) "interfere with, restrain,
or deny the exercise of" the right to that leave, or (2)
"discharge or in any other manner discriminate against any
individual for opposing any practice made unlawful by [the
FMLA]."  29 U.S.C. § 2615(a).  A claim based on the first
prohibition is an interference claim; one based on
discrimination is considered a retaliation claim.  *Yashenko v.
Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006).
"A retaliation claim under the FMLA differs from an interference
claim under the FMLA in that the interference claim merely
requires proof that the employer denied the employee his
entitlements under the FMLA, while the retaliation claim
requires proof of retaliatory intent."  *Bosse v. Balt. Cnty.*,
692 F. Supp. 2d 574, 588 (D. Md. 2010).  Hanning alleges both
types of claims;[17] the Defendants contend both must fail.

a.    Interference

To establish unlawful interference with an entitlement to
FMLA benefits, Hanning must prove that: "(1)she was an eligible

---

[17] *See* ECF No. 2 ¶ 37.

10

employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." *Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 495 (D. Md. 2013) (*quoting Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008)).

Interference may include "refusing to authorize FMLA leave" and "discouraging an employee from taking such leave." *Croy v. Blue Ridge Bread, Inc.*, No. 3:12-CV-00034, 2013 WL 3776802, at *8 (W.D. Va. July 15, 2013)(*quoting Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 142 (3d Cir. 2004) (*citing* 29 C.F.R. § 825.220(b))). Hanning must also show "that the violation prejudiced her in some way." *Id.* (*quoting Anderson v. Discovery Commc'ns*, LLC, 517 F. App'x 190, 197-98 (4th Cir. 2013), *as amended* (May 3, 2013)). Prejudice may include "lost compensation or benefits 'by reason of the violation,'" or "other monetary losses 'as a direct result of the violation.'" *Id.* at 198 (*quoting* 29 U.S.C. § 2617(a)(1)(A)(i)).

The Defendants argue that there is no evidence that St. Joseph's discouraged or barred Hanning from taking FMLA leave. ECF No. 16-1 at 33. Hanning's opposition does not address her

interference claim.  *See generally* ECF No. 17 at 11-13 (limiting

her FMLA arguments to her retaliation claim).[18]

Here, Hanning's evidence and deposition testimony show that

she requested information about taking FMLA leave for thyroid

surgery, St. Joseph's provided her with information about taking

FMLA leave and the required forms to complete, and afforded her

additional time to return the forms, which she never did.  ECF

Nos. 16-4 at 28; 17-7 at 2; 17-8 at 2-4; 17-9 at 2.  Although

Hanning was fired about two months after requesting FMLA leave,

timing alone "will rarely be independently sufficient to create

a triable issue of fact."  *See Mercer v. Arc of Prince Georges

Cty., Inc.*, 532 F. App'x 392, 397 (4th Cir. 2013)(*citing Simpson

v. Office of the Chief Judge of the Cir. Ct.*, 559 F.3d 706, 713

(7th Cir. 2009)).  More importantly, "[a] request for FMLA leave

did not grant Hanning immunity from discipline for violations of

[St. Joseph's nonrestraint policy."  ECF No. 16-1 at 35.  Thus,

---

[18] Hanning's complaint suggests--but does not clearly allege--
that her reassignment to St. Catherine's interfered with her
ability to care for her mother.  *See* ECF Nos. 2 ¶¶ 26-27, 37.
However, Hanning's opposition notes that "[i]t is undisputed
that Plaintiff provided her *initial notice* of her need for FMLA
leave, for thyroid surgery[,] on April 17, 2013."  ECF No. 17 at
4.  Further, there is no record evidence that Hanning requested
FMLA leave to care for her mother, or that she provided on-going
care.  *See* ECF Nos. 16-4 at 16; 17-7 at 2.  Thus, any FMLA
interference claim based on Hanning's visits to her mother must
fail.  *See Wonasue*, 984 F. Supp. 2d at 495; *Pilger v. D.M.
Bowman, Inc.*, 833 F. Supp. 2d 489, 498 (D. Md. 2011) *aff'd*, 521
F. App'x 307 (4th Cir. 2013) (the plaintiff must provide on-
going care to sick relative to qualify for FMLA leave).

Hanning cannot rely on her mere request for FMLA leave to establish interference. *Cf. Yashenko*, 446 F.3d at 549-50 (granting summary judgment for defendant on FMLA interference claim when it fired an employee on FMLA leave during a company reorganization); *Laing, v. Fed. Exp. Corp.*, 703 F.3d 713, 723-24 (4th Cir. 2013) ("[T]he FMLA does not preclude an employer from [suspending an employee] upon her return from [FMLA] leave if it would have taken the same action had the employee never taken leave in the first place."). Accordingly, the Defendants are entitled to summary judgment on Hanning's FMLA interference claim.

> b.   Retaliation

To establish retaliation, Hanning must show direct evidence of discrimination, or establish a *prima facie* case that raises an inference of illegal conduct. *See, e.g.*, *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). The burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973) applies to retaliation claims lacking direct evidence. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000); *Yashenko*, 446 F.3d at 551. First, Hanning must establish a *prima facie* case of retaliation. *See Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). The burden then shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse

action.  *See id.*  Hanning must then demonstrate that the

employer's reason was merely a pretext for retaliation by

showing "both that the reason was false and that discrimination

was the real reason for the challenged conduct." *Jiminez v. Mary*

*Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (internal

quotation marks omitted); *see also Foster v. Univ. of Maryland-*

*E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (at the pretext

stage, the plaintiff must show "that retaliation was a but-for

cause of a challenged adverse employment action").[19]

     To establish her *prima facie* case, Hanning must

demonstrate: (1) a protected activity; (2) a "materially"

adverse employment action; and (3) a causal connection between

the protected activity and materially adverse action.

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126

---

[19] In *Foster*, the Fourth Circuit held that *University of Texas*
*Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 186 L.
Ed. 2d 503 (2013), had no bearing on the causation element of a
*prima face* case of retaliation.  787 F.3d at 251.  *Nassar* held
that retaliation plaintiffs--unlike discrimination plaintiffs--
must establish but-for causation.  133 S. Ct. at 2533.  However,
the plaintiff in *Nassar* had proceeded under the direct method of
proving causation, not the indirect burden-shifting *McDonnell*
*Douglas* framework.  *See id.*  The Fourth Circuit concluded that
"applying the ultimate causation standard at the *prima facie*
stage[] would be tantamount to eliminating the *McDonnell Douglas*
framework in retaliation cases."  *Foster*, 787 F.3d at 251.
Accordingly, it held that because "the *McDonnell Douglas* frame-
work has long demanded proof at the pretext stage that retal-
iation was a but-for cause of a challenged adverse employment
action[,] *Nassar* does not alter the legal standard for
adjudicating a *McDonnell Douglas* retaliation claim."  *Id.* at
252.

S. Ct. 2405, 165 L.Ed.2d 345 (2006); *Bryant v. Aiken Reg'l Med.*

*Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003); *Yashenko*, 446

F.3d at 551.[20]

St. Joseph's concedes, solely for the purpose of summary

judgment, that Hanning has established a *prima facie* FMLA

retaliation claim in connection with her termination. *See* ECF

No. 16-1 at 37. Further, St. Joseph's has proffered a

legitimate, nondiscriminatory reason for firing Hanning: her

violation of its nonrestraint policy. *Id.* at 28; *see also* 17-2

---

[20] St. Joseph's first argues that Hanning's reassignment from St.
Vincent's to St. Catherine's was not an "adverse employment
action" under the FMLA. ECF No. 16-1 at 37 (*citing* ECF No. 16-4
at 29)(Hanning Dep.)("Well, three business days after I asked
for FMLA, I had a radical change of job."). Hanning does not
allege--nor does she argue in her opposition--that her
retaliation claim is based on her reassignment; rather, she
alleges that she was fired for requesting FMLA leave. ECF Nos.
2 ¶ 37; 17 at 12. In any event, an adverse employment action
"'adversely affect[s] the terms, conditions, or benefits of the
plaintiff's employment.'" *Holland v. Washington Homes, Inc.*, 487
F.3d 208, 219 (4th Cir. 2007) (*quoting James v. Booz-Allen &
Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal
quotation marks and citations omitted)). "[R]eassignment to a
new position commensurate with one's salary level" generally is
not "an adverse employment action even if the new job does cause
some modest stress." *James*, 368 F.3d at 376. Here, Hanning had
the same position, schedule, responsibilities, salary, and
benefits at St. Catherine's that she had at St. Vincent's. ECF
Nos. 16-4 at 12-13; 17-6 at 8-9. Accordingly, to the extent
Hanning has asserted an FMLA retaliation claim based on her
reassignment, it must fail.

at 7; 17-3 at 5-6; 17-6 at 4-5.[21]   St. Joseph's argues, however, that Hanning cannot demonstrate pretext.   ECF No. 16-1 at 38.

To survive summary judgment, Hanning must rebut the Defendants' evidence by showing that the proffered reason is, more likely than not, a pretext for discrimination.   *See Holland,* 487 F.3d at 214-15 (*quoting Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (internal quotations omitted)). She can do this "by showing that the employer's proffered explanation is unworthy of credence." *Id.* (*quoting Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981) (internal quotations omitted)).

Hanning argues that there is a genuine dispute of material fact about whether St. Joseph's reason was pretextual.   ECF No. 17 at 7.   Relying on principles of Maryland contract law, Hanning contends that the nonrestraint policy was ambiguous; thus, it is unclear whether she violated the nonrestraint policy, which must be construed in her favor.   *Id.* at 6-7, 10-11, 12.   Hanning's argument is unconvincing.

At most, Hanning demonstrates that there may be a reason to disagree with St. Joseph's stated reason for firing her.   Even

---

[21] St. Joseph's burden of proffering a legitimate, nondiscriminatory reason for firing Hanning "is one of production, not persuasion; it "can involve no credibility assessment." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000).

assuming, *arguendo*, that the nonrestraint policy is "open to interpretation,"[22] "[i]n reviewing whether an employer's decision is unlawful, the Court's task is not 'to decide whether the reason [for termination of employment] was wise, fair, or even correct, ultimately, so long as it truly was the reason for [the decision].'" *Mercer*, 532 F. App'x at 399 (*quoting Laing*, 703 F.3d at 722) ("On this point, [the plaintiff's] affidavit does no more than demonstrate the unexceptional fact that she disagrees with the outcome of [the defendant's] investigation.") (internal quotation marks omitted).  Hanning has proffered no other evidence demonstrating that St. Joseph's stated reason for firing her was false. *See Nelson v. DeVry, Inc.*, No. CIV.A. 07-4436, 2009 WL 1213640, at *9 (E.D. Pa. Apr. 23, 2009)("[P]retext is not demonstrated by showing simply that the employer was mistaken.  Instead, the record must be reviewed for behavior that could support an inference that [the employer] did not act for its stated reasons.").  Nor, at this stage, is temporal proximity sufficient to prove pretext. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (proof that defendant fired plaintiff after learning about the protected activity "far from conclusively establishes the requisite causal connection"); *Nathan v. Takeda Pharm. Am., Inc.*, 890 F. Supp. 2d 629, 648 (E.D. Va. 2012) aff'd, 544 F. App'x 192 (4th Cir. 2013)

---

[22] ECF No. 17-2 at 6.

(same).[23]  Accordingly, the Defendants are entitled to summary judgment on Hanning's FMLA retaliation claim.

    2.   ADEA Claim

    Under the ADEA, an employer may not "discharge any individual or otherwise discriminate against any individual with respect to . . . privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  To succeed on an ADEA claim, the plaintiff must be at least 40 years old and "'prove, by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision.'" *Id.*; *Bodkin v. Town of Strasburg*, 386 F. App'x. 411, 413 (4th Cir. 2010) (per curiam) (*quoting Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78, 129 S. Ct. 2343, 174 L.Ed.2d 119 (2009)).

    Similar to her FMLA claim, Hanning can prove age discrimination through one of two methods. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004); *Gott v. Town of Chesapeake Beach, Md.*, 44 F. Supp. 3d 610, 614 (D. Md. 2014).  First, she may use "any direct or indirect evidence relevant to and sufficiently probative of the issue," under "ordinary principles of proof." *Burns v. AAF-McQuay*,

---

[23] *See also Brookins v. Staples Contract & Commercial, Inc.*, No. CIV.A. 11-11067-RWZ, 2013 WL 500874, at *7 (D. Mass. Feb. 12, 2013) (employer's "obvious willingness to provide [employee] with FMLA leave is hard to reconcile with the asserted retaliation").

*Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (internal quotation marks omitted).  Absent direct evidence of discrimination, the Court applies the burden-shifting approach of *McDonnell Douglas*.[24]

Under *McDonnell Douglas*, Hanning must first establish a *prima facie* case of discrimination.  *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010).  Thus, Hanning must show that: (1) she was protected by the ADEA; (2) "[s]he suffered an adverse employment action"; (3) "[s]he was at the relevant time performing [her] duties at a level that met [her] employer's legitimate expectations"; and (4) "[her] position remained open or was filled by a similarly qualified applicant outside the protected class."  *Loveless v. John's Ford, Inc.*, 232 F. App'x. 229, 234–35 (4th Cir.2007) (per curiam) (*citing Hill*, 354 F.3d at 285).  If she does, "a presumption of illegal discrimination" arises, and the burden of production shifts to the employer to articulate a non-discriminatory reason for its adverse decision.  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

"If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and the *McDonnell Douglas* framework

---

[24] Hanning concedes that her ADEA claim must be analyzed under *McDonnell Douglas*.  ECF No. 17 at 8.

"drops out of the picture," *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff must then prove by a preponderance of the evidence that "the proffered reason was not the true reason for the employment decision," and that the true reason was disc- rimination. *Burdine,* 450 U.S. at 256, 101 S. Ct. 1089. She may do this directly or indirectly, by "persuading the [C]ourt that a discriminatory reason more likely motivated the employer" or by showing that the employer's explanation is "unworthy of credence." *Id.*

The Defendants argue that Hanning has not shown that she was replaced by someone outside the protected class, or that she was meeting St. Joseph's legitimate expectations. ECF No. 16-1 at 27-28. Hanning argues that there is a dispute of material fact as to whether she was meeting St. Joseph's legitimate expectations when she was fired. ECF No. 17 at 8. Hanning further argues that she was replaced at St. Catherine's by several nurses, "most of whom (60%) were under the age of 40" when they were hired. *Id.* at 4, 9.[25]

---

[25] Hanning testified that her ADEA claim is based on the fact that Dengler "now" has her position at St. Vincent's. ECF No. 17-4 at 5. However, Hanning's opposition argues that "the examination of the age of her replacement(s) must be limited to who replaced her at St. Catherine's[,] and any argument tied to who replaced her at St. Vincent's should be ignored." ECF No. 17 at 9 n.4. In any event, there is no evidence that Jensen-- who immediately replaced Hanning at St. Vincent's--or Dengler--

Hanning has not shown that she was meeting St. Joseph's legitimate expectations when she was fired.  Hanning's evidence demonstrates that she had been recently reassigned to St. Catherine's because of several complaints about her conduct by residents and staff, ECF No. 17-6 at 7-9, and she was fired for apparently violating St. Joseph's nonrestraint policy, ECF Nos. 17-2 at 7; 17-3 at 5-6; 17-6 at 4-5.  Any assertion by Hanning that she had not violated the nonrestraint policy is insufficient; her "own perception of her job performance cannot create an issue of fact on this element." *Avant v. S. Maryland Hosp., Inc.*, No. GJH-13-02989, 2015 WL 435011, at *5 (D. Md. Feb. 2, 2015)(*citing Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)).

Even had Hanning met this requirement, she has not shown that her position was filled by a similarly qualified applicant outside the protected class.  Hanning relies on evidence that-- from January 2013 to March 2015--St. Joseph's hired 10 nurses, five of whom were outside the protected class.  ECF No. 17 at 9; *see also* ECF No. 17-6 at 6.  However, there is no evidence about

---

who eventually replaced Jensen--is "outside the protected class"; *i.e.*, less than 40 years old. *Loveless*, 232 F. App'x. at 234-35; *Bodkin*, 386 F. App'x at 413; *see also* ECF Nos. 16-4 at 15 (Hanning's testimony that Jensen is older than she is); No. 17-4 at 5 (Hanning's testimony that Dengler is "[p]robably [in her] early 40s").  Accordingly, to the extent Hanning bases her ADEA claim on her reassignment to St. Catherine's, it must fail.

which, if any, of the 10 new nurses assumed Hanning's position;
her "unsupported speculation [about who assumed her duties] is
insufficient." *See Evans*, 80 F.3d at 960.  Finally, Hanning has
not proffered any evidence about the new nurses' qualifications.
*See Devan v. Barton-Cotton, Inc.*, 141 F.3d 1158, 1998 WL 183844,
at *3-*4 (4th Cir. 1998) (table opinion) (*citing Blistein v. St.
John's College*, 74 F.3d 1459, 1467 n. 7 (4th Cir. 1996))
(affirming summary judgment for the defendants when the
plaintiff failed to show that he was "replaced by someone of
comparable qualifications").

Even had Hanning demonstrated a *prima facie* case, her ADEA
claim fails for the additional reason that, as discussed above,[26]
she has not shown that St. Joseph's legitimate, non-
discriminatory reason for firing her was pretextual.  To the
extent she relies on evidence about the ages of the nurses St.
Joseph's has hired, "[i]n the absence of demographic information
about the pool of employees at [the company] and the pool from
which employees were hired or the positions into which they were
hired, the figures offered by [an employee] are not proof of
discrimination." *Henson v. Liggett Grp., Inc.*, 61 F.3d 270, 276
(4th Cir. 1995).  Further, half of the new hires were over 40
years old. *See* ECF No. 17-9 at 6.  As the Fourth Circuit has
recognized, "employers who knowingly hire workers within a

---

[26] *See supra* Section II.B.1.b.

protected group seldom will be credible targets for charges of pretextual firing." *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 513 (4th Cir. 1994) (*citing Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)). Accordingly, the Defendants are entitled to summary judgment on Hanning's ADEA claim.[27]

### 3. State Claim

Maryland law bars employers from "discharge[ing], or otherwise discriminat[ing] against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of . . . the individual's . . . age." Md. Code Ann., State Gov't § 20-606(a)(1)(i) (West 2010). Maryland courts "traditionally seek guidance from federal cases in interpreting [Title 20]." *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 914 A.2d 735, 742 (Md. 2007); *see also Bishop v. Bd. of Educ. of Calvert Cnty.*, 2011 WL 2651246, at *9 (D. Md. July 5, 2011), *aff'd*, 466 F. App'x 261 (4th Cir. 2012). Thus, Hanning's "state law claim is therefore properly analyzed under the same paradigm as her federal ADEA claim." *Avant*, 2015 WL 435011, at

---

[27] Gabriel and Richards are entitled to summary judgment for the additional reason that there is no individual liability for ADEA violations. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994).

*9.   Because Hanning's ADEA claim fails, the Defendants are entitled to summary judgment on her state law claim.  *See id.*[28]

III. Conclusion

For the reasons stated above, the Defendants' motion will be granted.

_____12/21/15_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[28] Hanning's complaint alleges that she was discharged because of a "disability."  ECF No. 2 ¶ 48.  However, Hanning has neither argued, nor proffered evidence of, a disability.  Hanning concedes that summary judgment on her state law claim is proper if the Court grants summary judgment for the Defendants on her federal claims.